# EXHIBIT 4

ACCO,(JCx),DISCOVERY,MANADR,RELATED-G

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
# CIVIL DOCKET FOR CASE #: 2:20-cv-03636-ODW-JC

Legendary Transport, LLC v. JPMorgan Chase & Co. et al     Date Filed: 04/20/2020
Assigned to: Judge Otis D. Wright, II     Jury Demand: Plaintiff
Referred to: Magistrate Judge Jacqueline Chooljian     Nature of Suit: 410 Anti-Trust
Related Case: 2:20-cv-03588-ODW-JC     Jurisdiction: Federal Question
Cause: 15:15 Antitrust Litigation

**Plaintiff**

**Legendary Transport, LLC**        represented by   **Adam D Dolce**
*for itself and for others similarly situated*                 Law Office of Adam Dolce
                                           414 Yale Avenue Suite B
                                           Claremont, CA 91711
                                           909-542-9030
                                           Fax: 909-992-3554
                                           Email: adam@dolcelegal.com
                                           *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**JPMorgan Chase & Co.**        represented by   **Karin Bohmholdt**
*TERMINATED: 04/28/2020*                      Greenberg Traurig LLP
                                           1840 Century Park East Suite 1900
                                           Los Angeles, CA 90067
                                           310-586-7700
                                           Fax: 310-586-7800
                                           Email: bohmholdtk@gtlaw.com
                                           *ATTORNEY TO BE NOTICED*

                                           **Robert J Herrington**
                                           Greenberg Traurig LLP
                                           1840 Century Park East Suite 1900
                                           Los Angeles, CA 90067-2121
                                           310-586-7700
                                           Fax: 310-586-7800
                                           Email: herringtonr@gtlaw.com
                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**JPMorgan Chase Bank, N.A.**        represented by   **Karin Bohmholdt**
                                           (See above for address)
                                           *ATTORNEY TO BE NOTICED*

                                           **Robert J Herrington**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bank of America, N.A.**
*TERMINATED: 04/28/2020*

**Defendant**

**Wells Fargo Bank, N.A.**
*TERMINATED: 04/28/2020*

**Defendant**

**Citibank N.A.**
*TERMINATED: 04/28/2020*

**Defendant**

**Does**
*1 to 1000, inclusive*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/20/2020 | 1 | COMPLAINT Receipt No: ACACDC-26150950 - Fee: $400, filed by Plaintiff Legendary Transport, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9) (Attorney Adam D Dolce added to party Legendary Transport, LLC(pty:pla))(Dolce, Adam) (Entered: 04/20/2020) |
| 04/20/2020 | 2 | CIVIL COVER SHEET filed by Plaintiff Legendary Transport, LLC. (Dolce, Adam) (Entered: 04/20/2020) |
| 04/20/2020 | 3 | CERTIFICATE of Interested Parties filed by Plaintiff Legendary Transport, LLC, (Dolce, Adam) (Entered: 04/20/2020) |
| 04/20/2020 | 4 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff Legendary Transport, LLC. (Dolce, Adam) (Entered: 04/20/2020) |
| 04/20/2020 | 5 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff Legendary Transport, LLC. (Dolce, Adam) (Entered: 04/20/2020) |
| 04/20/2020 | 6 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff Legendary Transport, LLC. (Dolce, Adam) (Entered: 04/20/2020) |
| 04/20/2020 | 7 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff Legendary Transport, LLC. (Dolce, Adam) (Entered: 04/20/2020) |
| 04/20/2020 | 8 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff Legendary Transport, LLC. (Dolce, Adam) (Entered: 04/20/2020) |
| 04/21/2020 | 9 | NOTICE OF ASSIGNMENT to District Judge Otis D. Wright, II and Magistrate Judge Gail J. Standish. (esa) (Entered: 04/21/2020) |
| 04/21/2020 | 10 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (esa) (Entered: 04/21/2020) |
| 04/21/2020 | 11 | 21 DAY Summons issued re Complaint 1 as to defendant Bank of America, N.A. (esa) (Entered: 04/21/2020) |

| 04/21/2020 | 12 | 21 DAY Summons issued re Complaint 1 as to defendant Citibank N.A. (esa) (Entered: 04/21/2020) |
| 04/21/2020 | 13 | 21 DAY Summons issued re Complaint 1 as to defendant JPMorgan Chase & Co. (esa) (Entered: 04/21/2020) |
| 04/21/2020 | 14 | 21 DAY Summons issued re Complaint 1 as to defendant JPMorgan Chase Bank, N.A. (esa) (Entered: 04/21/2020) |
| 04/21/2020 | 15 | 21 DAY Summons issued re Complaint 1 as to defendant Wells Fargo Bank, N.A. (esa) (Entered: 04/21/2020) |
| 04/22/2020 | 16 | MINUTE ORDER IN CHAMBERS by Judge Otis D Wright, II: This action has been assigned to the calendar of Judge Otis D. Wright II. Counsel are STRONGLY encouraged to review the Central Districts website for additional information.. The parties may consent to proceed before a Magistrate Judge appearing on the voluntary consent list. PLEASE refer to Local Rule 79-5 for the submission of CIVIL ONLY SEALED DOCUMENTS. CRIMINAL SEALED DOCUMENTS will remain the same. Please refer to the Judges procedures and schedules for detailed instructions for submission of sealed documents. (lc) (Entered: 04/22/2020) |
| 04/22/2020 | 17 | First APPLICATION for Temporary Restraining Order filed by Plaintiff Legendary Transport, LLC. Application set for hearing on 5/11/2020 at 01:30 PM before Judge Otis D. Wright II. (Attachments: # 1 Proposed Order TRO and OSC) (Dolce, Adam) (Entered: 04/22/2020) |
| 04/22/2020 | 18 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: First APPLICATION for Temporary Restraining Order 17 . The following error(s) was/were found: Hearing information is missing, incorrect, or not timely. Other error(s) with document(s): Docket entry has set ex parte application for erroneous hearing date of 5/11/20 1:30 PM which Does NOT appear on the pdf document itself. Otherwise the ex parte filing remains pending Judge's ruling. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 04/22/2020) |
| 04/23/2020 | 19 | NOTICE of Appearance filed by attorney Karin Bohmholdt on behalf of Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A. (Attorney Karin Bohmholdt added to party JPMorgan Chase & Co.(pty:dft), Attorney Karin Bohmholdt added to party JPMorgan Chase Bank, N.A.(pty:dft))(Bohmholdt, Karin) (Entered: 04/23/2020) |
| 04/23/2020 | 20 | NOTICE of Interested Parties filed by Specially Appearing Defendant JPMorgan Chase Bank, N.A., identifying Legendary Transport, LLC, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Bank of America, N.A., Wells Fargo Bank, N.A., Citibank, N.A.. (Bohmholdt, Karin) (Entered: 04/23/2020) |
| 04/23/2020 | 21 | NOTICE of Interested Parties filed by Specially Appearing Defendant JPMorgan Chase & Co., identifying Legendary Transport, LLC, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Bank of America, N.A., Wells Fargo Bank, N.A., Citibank, N.A.. (Bohmholdt, Karin) (Entered: 04/23/2020) |
| 04/23/2020 | 22 | NOTICE of Interested Parties filed by Specially Appearing Defendant JPMorgan Chase Bank, N.A., identifying Legendary Transport, LLC, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Bank of America, N.A., Wells Fargo Bank, N.A., Citibank, N.A.. (Bohmholdt, Karin) (Entered: 04/23/2020) |
| 04/23/2020 | 23 | CORPORATE DISCLOSURE STATEMENT filed by Defendant JPMorgan Chase & Co. (Bohmholdt, Karin) (Entered: 04/23/2020) |

| 04/23/2020 | 24 | CORPORATE DISCLOSURE STATEMENT filed by Defendant JPMorgan Chase Bank, N.A. (Bohmholdt, Karin) (Entered: 04/23/2020) |
|---|---|---|
| 04/23/2020 | 25 | MEMORANDUM in Opposition to First APPLICATION for Temporary Restraining Order 17 filed by Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A.. (Attachments: # 1 Declaration of Paul Beinstein, # 2 Declaration Karin L. Bohmholdt-Part 1 w/ Exhibits 1 -8, # 3 Declaration Karin L. Bohmholdt-Part 2 w/ Exhibits 9-11) (Bohmholdt, Karin) (Entered: 04/23/2020) |
| 04/23/2020 | 26 | NOTICE of Appearance filed by attorney Robert J Herrington on behalf of Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A. (Attorney Robert J Herrington added to party JPMorgan Chase & Co.(pty:dft), Attorney Robert J Herrington added to party JPMorgan Chase Bank, N.A.(pty:dft))(Herrington, Robert) (Entered: 04/23/2020) |
| 04/24/2020 | 27 | NOTICE of Entry of RULING filed by Defendant JPMorgan Chase & Co., JPMorgan Chase Bank, N.A.. (Attachments: # 1 Exhibit 1: Order Denying Ex Parte Application for Temporary Restraining Order in Outlet Tile Center v. JPMorgan Chase & Co., et al., (CV 20-3603-GW-MAAx), entered April 23, 2020 at ECF Dkt. No. 12)(Bohmholdt, Karin) (Entered: 04/24/2020) |
| 04/24/2020 | 28 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Notice of Entry of Decision or Ruling by a Judge of this Court, [27-1]. The following error(s) was/were found: Filer attached previous issued minutes from another case as an exhibit, however prior active electronic headers to that filing remain intact, thus making the current electronic headers illegible to the exhibit. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 04/24/2020) |
| 04/24/2020 | 29 | REPLY IN SUPPORT OF First APPLICATION for Temporary Restraining Order 17 filed by Plaintiff Legendary Transport, LLC. (Dolce, Adam) (Entered: 04/24/2020) |
| 04/24/2020 | 30 | DECLARATION of ADAM DOLCE IN SUPPORT OF First APPLICATION for Temporary Restraining Order 17 filed by Plaintiff Legendary Transport, LLC. (Attachments: # 1 Exhibit Exhibit A - NY TImes Article)(Dolce, Adam) (Entered: 04/24/2020) |
| 04/24/2020 | 31 | ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION 17 by Judge Otis D. Wright, II . (lc) .Modified on 4/24/2020 (lc). (Entered: 04/24/2020) |
| 04/27/2020 | 32 | ORDER RE TRANSFER PURSUANT TO Local Rule 83-1.3.1 and General Order 19-03 - Related Case- filed. Related Case No: 2:20-cv-03588 ODW(JCx). Case referred from Magistrate Judge Gail J. Standish to Magistrate Judge Jacqueline Chooljian for Discovery. The case number will now read as follows: 2:20-cv-03636 ODW(JCx). Signed by Magistrate Judge Jacqueline Chooljian. (rn) (Entered: 04/27/2020) |
| 04/28/2020 | 33 | FIRST AMENDED COMPLAINT against DEFENDANT JPMorgan Chase Bank, N.A. amending Complaint (Attorney Civil Case Opening), 1 , filed by Plaintiff Legendary Transport, LLC (Attachments: # 1 Exhibit March 31, 2020 Email, # 2 Exhibit April 1, 2020 Email, # 3 Exhibit April 2, 2020 Email, # 4 Exhibit April 3, 2020 Inquiry Screen, # 5 Exhibit Inquiry Confirmation 1, # 6 Exhibit Inquiry Confirmation 2, # 7 Exhibit April 7, 2020 Email, # 8 Exhibit April 10, 2020 Email, # 9 Exhibit April 8, 2020 Error Screen, # 10 Exhibit April 17, 2020 Email)(Dolce, Adam) (Entered: 04/28/2020) |
| 04/28/2020 | 34 | Request for Clerk to Issue Summons on Amended Complaint/Petition,, 33 filed by PLAINTIFF Legendary Transport, LLC. (Dolce, Adam) (Entered: 04/28/2020) |

| 04/28/2020 | [35] | 21 DAY Summons Issued re First Amended Complaint [33] as to defendant JPMorgan Chase Bank, N.A. (lc) Modified on 4/28/2020 (lc). (Entered: 04/28/2020) |

<br>

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/29/2020 10:54:26 | | | |
| **PACER Login:** | barbaragilles9 | **Client Code:** | 07555-0004 |
| **Description:** | Docket Report | **Search Criteria:** | 2:20-cv-03636-ODW-JC End date: 4/29/2020 |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

1  Adam Dolce, Esq – SBN 310112
2  adam@dolcelegal.com
   **LAW OFFICE OF ADAM DOLCE**
3  414 Yale Avenue, Suite B
4  Claremont, CA 91711
   Telephone: (909) 542-9030
5  Fax: (909) 992-3554

6
   Attorney for Plaintiff and the Proposed Class
7

8             **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

11  LEGENDARY TRANSPORT, LLC,         **Case No. 2:20-cv-03636**
12  for itself and for others similarly
    situated
13
                                       **CLASS ACTION COMPLAINT**
14          Plaintiff,                 **FOR:**

15      vs.
                                       1.  Violations of 15 USC § 1 (Sherman)
16                                     2.  Violations of 15 USC. § 2 (Sherman)
17  JPMORGAN CHASE & CO.;              3.  Violations of 15 U.S.C. § 15 (Clayton)
    JPMORGAN CHASE BANK, N.A;          4.  Negligence
18  BANK OF AMERICA, N.A.;             5.  Negligent Misrepresentation
19  WELLS FARGO BANK, N.A.;            6.  Declaratory Relief (28 USC § 2201)
    CITIBANK, N.A.; and                7.  Injunctive Relief (Sherman/Clayton)
20  DOES 1 to 1000, Inclusive,
21                                         **JURY TRIAL DEMANDED**
            Defendants.
22

23

24
           Plaintiff LEGENDARY TRANSPORT, LLC ("Legendary"), for itself
25
    and on behalf of a class of similarly situated persons or entities, hereby
26
27  complains against the Defendants and each of them as follows:

28

## INTRODUCTION

1. As has now been seen on a global scale, the COVID-19 pandemic has fundamentally altered the economic and societal landscape on which it arrived.

2. In part motivated by the effect this pandemic was having on the thirty million small businesses operating across the country, the President signed into law the Coronavirus Aid, Relief, and Economic Security Act on March 27, 2020 ("CARES Act").

3. Under the CARES Act, which was in essence a $2 trillion stimulus bill, the United States authorized SBA-approved lenders to immediately begin administering loans under what is now known as the Paycheck Protection Program ("PPP"). Guidelines were published both by the Treasury Department and the Small Business Administration (SBA) on or around April 2, 2020.

4. As part of the PPP, SBA-approved lending institutions were authorized to loan up to 2.5 times a small business's monthly payroll and related costs subject to very limited requirements and certifications.

5. Loans [to be] provided under the PPP were "100 percent guaranteed by the SBA," and were further anchored by a provision in the CARES

(¶ 5 cont'd)

Act that called for forgivability of the same loan amounts so long as the recipient of each loan used the proceeds consistent with the purpose of the PPP (specifically, for "payroll"-related costs).

6. Distribution of these loans was supposed to be quick and efficient, reflecting the exigency facing small businesses in light of the national emergency and state-based shelter-in-place orders.

7. In fact, many of the prior SBA-requirements applicable to business loans were waived for purposes of the PPP (such as "credit elsewhere").

8. The general requirements to receive a loan under the PPP required the applicant:

a. Be a small business as contemplated by the CARES Act (or a business exempt from such definitions);

b. Have been in operation as of February 15, 2020;

c. Had employees who received salaries and payroll taxes, or independent contractors; and

d. Make certifications "in good faith" as to the necessity of the loan due to "uncertainty"; that the funds will be used for "payroll costs"; and that the applicant is only making one loan request.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

3
CLASS ACTION COMPLAINT
LEGENDARY TRANSPORT, LLC v. JPMORGAN CHASE, ET Al.

9. For purposes of underwriting these loans, SBA-approved lenders were required to confirm receipt of the applicant's certifications, the information the applicant submitted corroborating its payroll costs, and to confirm the dollar amount being sought to calculate the loan amount (2.5x monthly payroll costs).

10. In addition, sole proprietors or self-employed individuals were also able to receive a loan under the PPP to cover their own payroll and payroll-related costs.

11. In other words, and with very limited exception, every small business in the United States would likely be qualified to receive a loan under the PPP given the uncertainty COVID-19 brought upon the business community at large.

12. For this expected demand, Congress initially earmarked $349 billion to fund the PPP. Practically-speaking, the PPP would have the effect of giving a mostly risk-free boost to small businesses across the country solely so they could survive the economic fallout that COVID-19 brought.[1]

---

[1] To the extent any applicant that received a loan could apply for loan forgiveness for the amounts used in the immediate two month-period following the loan distribution/reception-date. Because the maximum loan amount for any small business was 2.5 its monthly payroll costs, theoretically the most a small business would have to repay after loan forgiveness would be 1/5 the total loan amount.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

4
CLASS ACTION COMPLAINT
LEGENDARY TRANSPORT, LLC v. JPMORGAN CHASE, ET Al.

13. The CARES Act made no declaration as to priority of business by industry, or that SBA-approved lenders could make loans to preferred industries or businesses above other industries or businesses. To the contrary, the SBA contemplated SBA-approved lenders making loans under the PPP to both existing and new customers.

14. The PPP then started on April 3, 2020, which is when SBA-approved lending institutions could begin accepting applications pursuant to Treasury Guidelines.

15. As of April 16, 2010, 4,975 SBA-approved lending institutions approved 1.66 million loan applications under the PPP.

16. The entire amount initially earmarked for the PPP was reportedly exhausted as of April 16, 2020. As of that same date, approximately 94% of small businesses in the United States found themselves without a share.

17. Spanning this period, from April 3, 2020 to April 16, 2020, two of the most widely-reported issues facing the PPP were that the total amount earmarked by Congress under the CARES Act was available to small businesses on a first-come/first-served basis (and was confirmed by the SBA in its Interim Final Rule); and that the "major" banks failed to process applications in a timely manner.

18.     It is in this context that the Plaintiff brings the within action for declaratory, injunctive, and monetary relief.

## JURISDICTION & VENUE

19. This Court has jurisdiction over the Defendants and this action pursuant to 28 U.S.C. §§ 1331, 1332(d)(2), and 1337, as well as 15 U.S.C. §§ 4 and 15. For purpose of § 1332(d)(2), there are members of the Class who are citizens of states other than the states of citizenship of the Defendants, and the amount in controversy exceeds Five Million Dollars ($5,000,000.00) (exclusive of interest and costs).

20. Venue lies in this District pursuant to 28 U.S.C. §§ 1391, as well as 15 U.S.C. 15(a), since the Defendants conduct a continuous course of business in the State of California.

## PARTIES

21. The named Plaintiff, Legendary Transport, LLC ("Legendary"), is a small business within the meaning defined by the SBA and the CARES Act, and is owned and operated by the individual, Lindsey Kszos.

22. Legendary is organized under the laws of the state of Florida, though its transportation clients are from across the country and routinely engage in interstate commerce (including in and out of California).

23. In addition, Legendary and Ms. Kszos are business clients of the Chase Defendants and have been for years.

24. Defendant JPMorgan Chase & Co. is a multinational investment bank and financial services holding company headquartered in New York City, NY. It is believed and alleged to be the parent corporation to JPMorgan Chase Bank, N.A. (together, "Chase Defendants" or "Chase Bank").

25. Defendant JPMorgan Chase Bank, N.A. is a national banking association formed under the laws of the United States. It is the country's largest bank, with an active presence in this district. It operates the entity known as "Chase Business Banking," though it remains unclear to Plaintiff whether such a designation is, in fact, a separate legal subsidiary of the Chase Defendants.

26. It is believed and alleged other subsidiaries operating under the parent arm of JPMorgan Chase & Co. may have been involved in the acts/omissions to follow. As a result, and because the Plaintiff is unaware of the particular types of subsidiaries that may have had such a role, Plaintiff sues such additional defendants in a fictitious capacity identified as DOES 1 through 5. Plaintiff will seek leave to amend her complaint/caption when such actual names are learned.

27. For purposes to follow, the Chase Defendants are being sued jointly and severally, as the parent corporation would have directed or controlled the activities of its subsidiaries – particularly with respect to the CARES Act and the PPP – and/or would have conspired with the same subsidiaries.

28. It is believed and alleged, based on the allegations to follow, that the Chase Defendants may have given preferential treatment to small business-clients over other small business-clients. These preferred small business-clients are therefore being sued in a fictitious capacity identified as DOES 5 through 1000. Plaintiff will seek leave to amend her complaint/caption when such actual names are learned.

29. Defendant Bank of America, N.A., is a national banking association headquartered in Charlotte, North Carolina. It is owned by its parent company, Bank of America Corp., which is multinational investment bank and financial services holding company also headquartered in Charlotte, North Carolina. Both have transacted substantial business in this district.

30. Defendant Wells Fargo Bank, N.A. is a national banking association headquartered in San Francisco, CA. It is owned by its parent company, Wells Fargo & Co., which is a multinational investment

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

8
CLASS ACTION COMPLAINT
LEGENDARY TRANSPORT, LLC v. JPMORGAN CHASE, ET Al.

(¶ 30 cont'd)

bank and financial services holding company also headquartered in San Francisco, CA. Both have transacted substantial business in this district.

31. Defendant Citibank, N.A. is a national banking association headquartered in New York City, NY. It is owned by its parent corporation, Citicorp, which itself is fully held by Citigroup, Inc., a multinational investment bank and financial services holding company also headquartered in New York City, NY. These entities have transacted substantial business in this district.

**FACTS**

32. After the CARES Act was signed into law, the Defendants began to prepare for the likely influx of applications they would receive from those small businesses/ persons seeking immediate relief under the PPP.

33. On March 31, 2020, for instance, Chase Bank issued an email to all of its business clients – which it's believed included the Plaintiff – advising them on the details of the PPP and what Chase Bank would require from them in order to be considered. An accurate copy of this March 31, 2020-email is attached hereto as **Exhibit 1**.

34. Exhibit 1 contained a specific representation from Chase Bank that the PPP-application would only be available "online" and would not be "available by phone or [in person]."

35. Exhibit 1 further advised Chase Bank's business clients to prepare for when Chase Bank would make the application available online, and identified the specific information Chase Bank would require in order to process the same.

36. On April 1, 2020, Chase Bank then issued another email to all of its business clients – which it's believed included the Plaintiff – advising them Chase Bank would be hosting a "webinar" on information relating to the PPP. An accurate copy of that email is attached hereto as **Exhibit 2**.

37. On April 2, 2020, Chase Bank then issued another email to all of its business clients – which it's believed included the Plaintiff – advising them that Chase Bank would specifically announce when they would start accepting applications. An accurate copy of this email is attached hereto as **Exhibit 3**.

38. According to Exhibit 3, Chase Bank made the following representations and assurances to its business clients:

a. "***Make no mistake*** – we will help you, our customer, with getting access to these emergency funds. And we will make it as easy as possible for you to get these funds quickly."

b. "We will announce when we can start accepting applications in several ways: 1. We will send an email to all customers for whom we have an email. 2. We will tweet at @ChaseforBusiness and @Chase. 3. We will update our website chase.com/cares in real time."

c. "All applications must be made online through this digital form."

39. Worth noting, Chase Bank's "twitter handles" – for itself and for its business clients – are @Chase and @ChaseforBiz (*not* @ChaseforBusiness).

40. In this same email, Chase Bank did advise its business clients – including the Plaintiff – that it expected a delay to the application-open date of April 3, 2020 as a result of it "awaiting guidance from the SBA and the U.S. Treasury."

41. At some point on or around April 2, 2020 or April 3, 2020, the SBA and the Treasury Department published their Interim Final Rule/Guidelines regarding loan applications under the PPP.

42. Said Interim Final Rule confirmed the PPP was to be administered on a "first-come, first-served" basis. In addition, an applicant for a loan under the PPP could only make one loan request, and would have to certify to that fact.

43. On April 3, 2020, several SBA-approved lending institutions began accepting applications from borrowers seeking PPP-related loans.

44. As will be important for the causes to follow, all four major lending institutions named in this action required putative borrowers to be existing clientele for purposes of applying for a loan under the PPP.

45. All four of these major banks timed their announcement at or around the same time. It is therefore believed and alleged these major lenders – Bank of America; Chase Bank; CitiBank; and Wells Fargo – all agreed to limit their applications under the PPP to existing customers in order to protect their market share and to limit competition with one another with respect to the $349b PPP-fund.

46. Neither the CARES Act nor the PPP required that borrowers make applications with their specific lending institutions, which means such a limitation was instituted by the lenders themselves.

47. By April 5, 2020, Chase Bank had failed to announce to its business clients via electronic correspondence or through its twitter handles

(¶ 47 cont'd)

that it was accepting applications under the PPP.

48. However, Chase Bank had begun accepting "inquiries" that its business clients – which included the Plaintiff – could submit for purposes of a future application for a loan under the PPP.

49. By April 5, 2020, or two days after Chase Bank had begun accepting these *inquiries*, it had still failed to announce that same information to its business clients via electronic correspondence or through its twitter handles.

50. In other words, a typical small business would quite literally need to be on Chase Bank's website to know the inquiry-portal had been opened as of April 3, 2020. An accurate copy of what the online inquiry-form actually looked like on April 3, 2020 is attached hereto as **Exhibit 4**.

51. At the bottom of Exhibit 4, in miniscule print, Chase Bank included some additional language seeking to limit its liability to its business clients. In relevant part, this language included the following phrases:

a. "Chase anticipates high volume and there may be processing delays and system failures along with other issues that interfere with Chase taking your application or submission of any

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

13
CLASS ACTION COMPLAINT
LEGENDARY TRANSPORT, LLC v. JPMORGAN CHASE, ET Al.

(¶ 51 cont'd)

application to SBA."

b. "Chase does not represent or guarantee that it will take your application or submit any applications taken before SBA funding is no longer available or at all."

c. "By using Chase to seek a [PPP] loan, you agree that Chase is not responsible or liable to you

    i. If your application is not taken by Chase or any application is not submitted to the SBA until after SBA stops approving applications, for any reason or

    ii. If your inquiry or any application is not processed."

d. "You also forever release and waive any claims against Chase concerning failure to obtain a loan. This release and waiver applies to but is not limited to [sic] any claims concerning Chase's

    i. Pace, manner or systems for processing or prioritizing your inquiry or any resulting applications, or

    ii. Representations by Chases [sic] regarding the application process, the [PPP], or availability of funding."

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

52. After a business client would submit one of these inquiries as found at Exhibit 4, Chase Bank would confirm receipt of the inquiry in two ways.

53. First, a "Thank You"-screen would load immediately following submission of the inquiry (an accurate copy of this screen is attached hereto as **Exhibit 5**).

54. Second, Chase Bank would send another form email acknowledging receipt of the inquiry (an accurate copy of this form email, dated April 5, 2020 and which all business clients would have received as part of the inquiry-process, is attached hereto as **Exhibit 6**).

55. According to Exhibit 5, Chase Bank specifically represented to its business clients it was "unable to accept any application from [them] until [Chase Bank] contact[ed] [them]."

56. According to Exhibit 6, Chase Bank advised its business clients that they could expect to receive "either: an email asking you to go online to complete your application or a call to complete your application over the phone."

57. This same email at Exhibit 6 also specifically advised its business clients that Chase Bank's call center/branch personnel would not answer questions relating to the PPP.

58. Chase Bank's application portal – for business clients to finally and formally apply for a loan under the PPP – finally went live sometime on or around April 6, 2020.

59. Leading up to and including April 6, 2020, however, Chase Bank did not send an email to its business clients nor did it tweet the information out via its twitter handles. It also failed to call those business clients that had submitted an inquiry as contemplated by Exhibit 6.

60. More specifically, and as will be consistent with most small business-clients of Chase Bank, Legendary did not receive an email advising it that it could begin applying to the PPP.

61. Instead, a typical business client would have had to specifically navigate to Chase Bank's website to know its portal was live and open for accepting applications.

62. On April 7, 2020 – four days after other SBA-approved lending institutions had gone live with their applications, and six days before the funding for the PPP was reportedly exhausted – Chase Bank then sent an email to its business clients that had the wherewithal to submit an "inquiry" as described herein. An accurate copy of this email is attached hereto as **Exhibit 7**.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

63. On April 10, 2020, Chase Bank then sent an email to its business clients that did not have the wherewithal to submit an "inquiry" as described herein advising them it was accepting applications. An accurate copy of this email is attached hereto as **Exhibit 8**.

64. Due to the delay and contradictory information presented by Chase Bank to many of its business clients, Legendary was unable to timely submit an application with Chase Bank for purposes of the PPP.

65. Because of the restrictions in place by the Defendants as a whole, Legendary was similarly unable to seek a loan under the PPP from any other major lender.

66. On April 17, 2020, Chase Bank sent another form email to most, if not all of its business clients that did not receive funding through the PPP advising them the SBA had guaranteed all of the funds under the initial earmark made for the PPP via the CARES Act. An accurate copy of this email is attached hereto as **Exhibit 9.**

67. According to Exhibit 9, Chase Bank had represented it had already informed those of its business clients that had been approved and would receive funding under the PPP.

68. It is currently unknown which of those business clients' applications were actually processed and approved by Chase Bank.

69. It is worth noting for purposes to follow, however, that Chase Bank processed and approved three major loans under the PPP on April 7, 2020. Ruth Hospitality Group, which owns and operates Ruth Chris's Steak House, received $20m from Chase Bank; Texas Taco Cabana, L.P, which is owned by restaurant conglomerate Fiesta Restaurant Group, received $10m; and the Potbelly Corporation, which owns the Potbelly's restaurant chain, received $10m.

70. With respect to the Ruth Hospitality Group and Texas Taco Cabana, SEC filings indicate these promissory notes were executed on April 7, 2020 already having received prior SBA-approval.

71. Given the timing of these loans to these relatively large restaurant corporations, it is reasonable to conclude, and therefore allege, that Chase Bank prioritized loan applications of what it must have considered "favored businesses" over other small businesses contrary to the spirit and purpose of the CARES Act and the PPP.

72. In other words, it is alleged that Chase Bank picked "winners" under its implementation of the PPP, or gave the same "winners" advanced notice for purposes of providing a leg-up over other businesses.

73. Legendary alleges Chase Bank prioritized their "winners" based, in part, on pre-existing debt considerations.

74. For instance, Ruth Hospitality Group had already drawn down most of its revolving credit by the time the CARES Act was passed.

75. It is also reasonable to conclude, and therefore allege, that Chase Bank would have been in prior communication with those business clients it favored over its other business clients for purposes of processing loan applications under the PPP and submitting them for approval to the SBA.

76. Legendary asks and therefore alleges: how else could these restaurant groups have <u>received</u> $30m in loans on April 7, 2020 when Chase Bank didn't even inform many of its small business clients that they needed to finish their applications *until* April 7?

77. Such discriminatory treatment among its business clients, despite the fact the CARES Act and the PPP did not authorize such disparate treatment, constitutes blatant anti-competitive and conspiratorial conduct.

78. In addition, the tacit agreement of the major bank-defendants – to exclude each other from market competition in the context of the PPP by way of their "parallel conduct" –is cartel-like conduct over trade and/or commerce.

79. In other words, and as plus factors, each Defendant-bank must have known a. that their existing, combined, small business-client population consisted of a majority of the small businesses in the country; b. that each of these small businesses could only make *one* application under the PPP to an SBA-approved lender; c. that there was plenty of guaranteed loan money to go around within this population vis-à-vis each major lender; such that d. it made no sense to compete with one another as to the same amounts (*see also* Interstate Circuit, Inc. v. United States (1939), 306 U.S. 208, 227).

80. This collusion, or cartel-like behavior, is *per se* illegal. It amounts to anticompetitive dealing among the four [soon to be] largest SBA-approved lenders that should have known such a plan would be a complete restraint on the hundreds of thousands, if not millions, of small business-clients seeking loans under the PPP.

///

# CLASS ACTION ALLEGATIONS

81. The named Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein as class-related allegations.

82. In accordance with the Federal Rules of Civil Procedure, Rule 23(a) and (b), the named Plaintiff, Legendary, brings this action on behalf of itself and as a member of the Class as defined below.

83. For purposes of the FRCP, Rule 23(a), and Local Rules 23-2.1 through 2.2, Plaintiff brings this action on behalf of itself and as members of the Class consisting of the following three sub-classes (per FRCP, Rule 23(c)(5)):

   a. For injunctive relief only, every small business in the United States who may have qualified for a loan under the PPP with any of the named defendants but for the criteria that such small businesses be defendant's existing customer;

   b. From February 15, 2020 to April 16, 2020, (i) all commercial/business clients of Chase Bank who could have qualified for a loan under the PPP and (ii) who received the series of form emails from Chase Bank as attached to this Complaint and (iii) whose applications were not funded by Chase Bank because of

(iv) the delay created by the transmission and receipt of those emails; and

c.   From April 3, 2020 to April 16, 2020, (i) all commercial/business clients of Chase Bank who applied for a loan under the PPP and (ii) who would have otherwise met the requirements necessary to receive a loan under the PPP from Chase Bank but (iii) whose applications were not funded by Chase Bank because of (iv) Chase Bank's preferential processing of certain loan applications over other loan applications.

84.   For purposes of FRCP, Rule 23(a)(1), and Local Rule 23-2.2, this Class is so numerous that joinder of all members is impractical. The Class consists of small businesses that are business clients of the largest banking institutions in the country. It is presumed a majority of Chase Bank's "small business"-clients would have made an inquiry and application under the PPP with them, as it was a widely-known lifeline created by the CARES Act. Since the majority of SBA-approved lenders limited applications to their own existing clientele, particularly the *Big Four* (Chase Bank; CitiBank; Wells Fargo; Bank of America), it's further presumed the majority of Chase Bank's "small business"-clients would generally not have been able to apply for a

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

22
CLASS ACTION COMPLAINT
LEGENDARY TRANSPORT, LLC v. JPMORGAN CHASE, ET Al.

(¶ 84 cont'd)

loan under the PPP with any other lending institution but Chase Bank.

85. For purposes of FRCP, Rule 23(a)(2), and Local Rule 23-2.2, there are questions of law and fact almost entirely common to this Class. These common questions include, but are not limited to:

   a.  Whether each and every small business-client of Chase Bank was sent and received the emails described herein;

   b.  Whether transmission and receipt of those emails contributed to a material delay in Chase Bank's small business clients from seeking loans under the PPP elsewhere (if they even could);

   c.  Whether the language included in the Defendants inquiry portal – as found at Exhibit 4 – is binding on each of its small business-clients as it relates to the causes set forth in this action;

   d.  Whether the language included in the Defendants inquiry portal – as found at Exhibit 4 – constitutes wanton bad-faith and oppressive conduct;

   e.  Whether Chase Bank gave preferential treatment to some small business-clients over other small business-clients;

   f.  Whether Chase Bank was in prior communication with some of the small business-clients it would have given preferential treatment;

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

g. Whether Chase Bank purposely delayed its small business-clients from applying for a loan under the PPP in light of its preferential treatment to other small business-clients;

h. Whether Chase Bank purposely failed to fulfill its own assurances to its small business-clients as reflected in Exhibit 3;

i. If Chase Bank did purposely fail to fulfill its own assurances, an examination as to why;

j. What order Chase Bank processed the applications it actually received from its small business-clients;

k. Whether Chase Bank was in contact with any other major lending institution with respect to the preferential treatment described herein;

l. Whether Chase Bank was in contact with any other major lending institution with respect to the parallel conduct of limiting its applicants to existing business clients; and

m. Whether the causes set forth in this action can be stated against the Defendants by this Class as based on the facts alleged in this complaint.

86. For purposes of FRCP, Rule 23(a)(3), and Local Rule 23-2.2, the claims of Legendary, which arise out of the Defendants' acts and

(¶ 86 cont'd)

omission as described herein, are almost universally typical of the claims of the Class members. Likewise, defenses to Legendary's claims – consisting of both legal and factual defenses – are also typical of the defenses to the claims of the Class.

87. For purposes of FRCP, Rule 23(a)(4), and Local Rule 23-2.2, Legendary will fairly and adequately represent and protect the interests of the Class. Legendary, as represented by Ms. Kszos, is articulate and knowledgeable about its claims, and is fully able to describe and appreciate them. There are no conflicts of interest between Legendary and the interests of the Class, and the loss suffered or about to be suffered by Legendary is substantially similar to the loss suffered or about to be suffered by the class [as a result of Chase Bank's acts/omissions, in particular]. The declaratory and injunctive relief sought by Legendary will, similarly, be consistent with the relief each member of the Class could, would, and should be entitled to.

88. Counsel for Legendary is competent and suited to represent its interest and the interests of the Class at large. While a smaller practice in general, counsel for Legendary, Adam Dolce, has been practicing law for over ten years. He has state bar licenses in CA, NY, and IN, and

(¶ 88 cont'd)

is admitted to practice law before several federal districts as well (IN, CA, CO). Counsel has prosecuted several complex litigation-matters, including legal and medical malpractice-actions, and is sufficiently familiar with declaratory and injunctive relief. This will be the second class action he has filed in his career, and first involving the federal anti-trust laws. The only conflict counsel is aware of is that he is, like many persons in the country, a banking client of Chase Bank. To the extent he applied for relief under the PPP, he will waive his interest as a potential class member.

89. For purposes of FRCP, Rule 23(b)(1), this class action is favored and appropriate since separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members in individual states (for example, whether the release as evidenced at Exhibit 4 is valid and binding). Moreover, prosecuting separate actions would also create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

90. This class action is also favored under Rule 23(b)(2) to the extent Chase Bank (or other Defendants) who may oppose the Class, has acted, as described herein, on grounds that apply generally to the class such that injunctive and declaratory relief is appropriate for the Class as a whole.

91. Finally, this class action is also favored under Rule 23(b)(3) to the extent questions of law and fact are common to the Class and predominate over any questions that may affect individual members of the same. A class action is simply superior to any other available methods for fair and efficient adjudication, as it will facilitate the resolution of the broadest number of claims in the most efficient forum available. Any difficulties arising under, or inherent to this action, will be insubstantial compared to alternative methods of individualized litigation.

92. As far as Legendary is aware, no similar litigation has been commenced by any other member of the Class, and this Court is the appropriate forum for causes to follow. The only similar litigation Legendary is aware of is the case of <u>Profiles, Inc. v. Bank of America Corp., et al</u>, Case No. 1:20-cv-008940SAG filed on April 3, 2020 in the District Court of Maryland (Northern).

93. However, that is a suit seeking damages for causes of action alleged to be "implied" under the CARES Act and the SBA Loan Program, and for declaratory/injunctive relief tied to those implied causes.

94. The other lawsuits Plaintiff and Class Counsel have identified appear focused on SBA-approved lenders, including the named defendants herein, violating state laws relating to unfair/fraudulent competition (e.g., Case No. 20-3590, Law Office of Irina Sarkisyan v. U.S. BANCORP, filed on April 19, 2020 in this District).

95. This Action is rooted, instead, in federal law. With respect to the common law, for example Plaintiff's cause of action for negligence on behalf of the Class, no similar actions have yet been identified.

96. For purposes to follow, Chase Bank has significant market power as it relates to the banking and financial sector – particularly in the United States. By market capitalization, it is the world's most valuable bank. It operates more than 5,000 separate locations, with over 1000 locations in California alone. Because of its market share in the United States, the Chase Defendants have now disbursed more loans under the PPP than any other SBA-approved lender.

97. With respect to the remaining Defendants, Wells Fargo, Bank of America, and Citibank are all major banks in the United States with

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

28
CLASS ACTION COMPLAINT
LEGENDARY TRANSPORT, LLC v. JPMORGAN CHASE, ET Al.

(¶ 97 cont'd)

significant market power in the financial and lending services industry. Combined, these banks hold approximately 45% of all U.S. customer deposits. They are commonly known in the United States as the *Big Four*, which adequately and accurately reflects their combined market power and geographical reach.

98. More acutely, and with respect to the Class consisting of Chase Bank's small business clients, Chase Bank exercised market power over approximately 100% of the loans that were available under the PPP to these same small business clients.

99. That isn't to allege Chase Bank exercised 100% market power over the $349b; it is to allege, however, that of the $349b accessible to Chase Bank clients, Chase Bank exercised nearly 100% market power/access relative to their particular small business-applicants.

100. The same market power is applicable to the remaining defendants. Each major lender exercised near total control over their small business-clients' access to these same amounts simply by virtue of limiting that access to existing clients only.

///

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

29
CLASS ACTION COMPLAINT
LEGENDARY TRANSPORT, LLC v. JPMORGAN CHASE, ET Al.

# FIRST CAUSE OF ACTION
## (SHERMAN ACT (15 U.S.C. § 1) – ALL DEFENDANTS)

101.　　Legendary hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein for its first cause of action.

102.　　The conduct described herein, where each major bank announced it would limit its applications to existing customers, constitutes "market" or "customer allocation" among the major banks/defendants.

103.　　Such market or customer allocation constitutes an unreasonable "restraint of trade or commerce" within the meaning of the Sherman Act.

104.　　The submission and approval of loans under the PPP is "trade" or "commerce" as that phrase is defined and understood for purposes of the Sherman Act.

105.　　Even if each Defendant could argue they limited applications to their own existing customers in order to be more efficient with respect to a program that required expedited processing, the information required under the PPP, as contemplated by the SBA's Interim Final Rule and the Treasury Guidelines, would have been the same regardless of customer-type (existing or new customers).

**LAW OFFICE OF
ADAM DOLCE**
ATTORNEY AT LAW

106.    By announcing they would limit applications under the PPP exclusively to their own market base, then, each of these major banks participated in a *per se*-violation of the Sherman Antitrust Act (Section 1) (*see also* <u>Palmer v. BRG Georgia, Inc</u>. (1990), 498 U.S. 46).

107.    Such limitations had and continue to have an effect on interstate commerce. In fact, given the effect of the PPP was supposed to have on small businesses across the country, such limitations go to the very heart of interstate commerce.

108.    Plaintiff therefore seeks all available relief available to it and the Class under the Sherman Act, § 1, and as is contemplated by the Clayton Act, 15 U.S.C. § 15.

## **SECOND CAUSE OF ACTION**
### **(SHERMAN ACT (15 U.S.C. § 2) – CHASE DEFENDANTS AND DOES 5 THROUGH 1000 ONLY)**

109.    Legendary hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein for its first cause of action.

110.    Chase Bank has significant market power in the lending and financial services industry. As was previously alleged, with respect to the market created by the CARES Act and the PPP, and relative to their small business applicants, and because no other major lender

**LAW OFFICE OF
ADAM DOLCE**
ATTORNEY AT LAW

(¶ 109 cont'd)

would consider "new" customers, Chase Bank retained near 100% market control. Such is a monopoly power over its clients.

111. The submission and approval of loans under the PPP is "trade" or "commerce" as that phrase is defined and understood for purposes of the Sherman Act.

112. The conduct described herein constitutes an attempt by the Chase Defendants to attempt to monopolize, or combine or conspire with those defendants identified as DOES 5 through 1000, to monopolize trade or commerce among the several states. The conduct described herein constitutes an attempt by the Chase Defendants to maintain its monopoly power through exclusionary conduct.

113. In addition to the conduct described between the Chase Defendants and the other major lending institutions, the Chase Defendants also attempted or conspired with their own preferred small business clients (DOES 5 through 1000) to assist them, or attempt to assist them, in monopolizing their own industries in the context of facilitating and approving their loans under the PPP.

114. Such facilitation and approval, in a time where small business will rise or fall according to the funds available under the CARES

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

32
CLASS ACTION COMPLAINT
LEGENDARY TRANSPORT, LLC v. JPMORGAN CHASE, ET Al.

(¶ 113 cont'd)

Act/PPP, is anticompetitive and conspiratorial conduct in plain violation of 15 U.S.C. § 2.

115.    As an example, the Chase Defendants have given at least three major restaurant chains market advantage over other restaurants in the same industry and serving the same consumers. If they did so out of intended preference and purpose – fast-tracking applications over other applications, for instance, because of existing debt obligations – the Chase Defendants have engaged in anticompetitive conduct as contemplated by 15 U.S.C. § 2.

116.    This is in fact the very kind of exclusionary conduct the Sherman Act prohibits. Presumably Congress and the SBA were aware lending institutions should not pick their winners, and that is why they instituted a "first come, first served"-barrier to entry under the PPP.

117.    Plaintiff therefore seeks all available relief available to it and the Class under the Sherman Act, § 1, and as is contemplated by the Clayton Act, 15 U.S.C. § 15.

### THIRD CAUSE OF ACTION
### (CLAYTON ACT (15 U.S.C. § 15)– ALL DEFENDANTS)

118.    Legendary hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

33
CLASS ACTION COMPLAINT
LEGENDARY TRANSPORT, LLC v. JPMORGAN CHASE, ET Al.

(¶ 117 cont'd)

herein for its first cause of action.

119.     The conduct committed by the Defendants harmed Legendary, as well members of the Class, in ways that are forbidden by the antitrust laws. If even one business was unreasonably passed-over for a loan under the PPP in favor of another business, such acts would constitute anti-competitive conduct prohibited by the antitrust laws of the United States.

120.     Such conduct would be a violation of 15 U.S.C. § 15, and Plaintiff, on behalf of itself and the Class, seeks all available relief available under the same section.

121.     As is specific to Legendary, and as is likely an impact on the Class in general, Legendary was given conflicting information preventing her from providing a timely application to Chase Bank under the PPP.

122.     If Congress earmarks additional funds to the PPP, and SBA-approved lenders are authorized to re-open their application systems (or to continue processing existing applications), Legendary and the Class in general may be further harmed if the conduct described herein is not enjoined or otherwise addressed.

## FOURTH CAUSE OF ACTION
### (NEGLIGENCE – CHASE DEFENDANTS ONLY)

123.     Legendary hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein for its first cause of action.

124.     Chase Bank's emails, together with the CARES Act (specifically, the sections detailing the PPP), as well as the guidelines and rules implemented by the Treasury Department and SBA, constitute the standard-of-care applicable to the processing of loans submitted to Chase Bank for approval under the PPP.

125.     Chase Bank had a duty-of-care to Legendary and the Class by virtue of its own emails and assurances, as well under the plain language, spirit, and purpose of the CARES Act's PPP. It cannot be understated that timing was everything with respect to the PPP (first-come/first-served).

126.     Chase Bank breached their duty in the following ways (which is not exclusive):

     a. It failed to timely announce to Legendary and the Class when it was accepting queries for applications despite assuring the same Class it would do so;

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

35
CLASS ACTION COMPLAINT
LEGENDARY TRANSPORT, LLC v. JPMORGAN CHASE, ET Al.

b.  It failed to timely announce to Legendary and the Class when it was accepting applications despite assuring the same Class it would do so;

c.  It failed to make the query/application-process "as easy as possible" despite its assurance otherwise;

d.  It prioritized certain applications over others;

e.  It specifically required that applicants not contact it by phone or in-person, requiring all applications be submitted through the online platform; and

f.  It created a platform that was incapable of timely accommodating the applications that were submitted;

127.    As a result of its assorted breaches and contradictory instructions, Legendary and the Class were harmed in an amount to be determined at trial. The measure of that harm, however, *will generally begin* with a calculation as to i. When Chase Bank received applications under the PPP (from the Class); 2. Which of those applications met all of the SBA/PPP-requirements; and 3. Which of those applications were approved and funded 4. As compared, from a calendar/timing-perspective, to those of the Class that were denied or otherwise not funded.

# FIFTH CAUSE OF ACTION
## (NEGLIGENT MISREP. – CHASE DEFENDANTS ONLY)

128.     Legendary hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein for its first cause of action.

129.     The collection of emails Chase Bank issued to its small business-clients, which went to most if not all of the Class, are now provably false.

130.     As evidenced by Exhibit 3, Chase Bank made specific representations that they represented as true: namely, that they would timely announce the application process through three separate channels (email; twitter; and live on their website).

131.     As evidenced by Exhibit 4, Chase Bank further represented it would take certain steps to those members of the Class that had the wherewithal to submit an inquiry (that, again, was not announced ahead of time).

132.     These combined representations were not true. Chase Bank did not timely inform by email or twitter that it had opened an inquiry-process, or that applications were being accepted. They limited the ability of the Class to submit applications or inquiries via online only,

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

**LEGENDARY TRANSPORT, LLC v. JPMORGAN CHASE, ET Al.**

(¶ 131 cont'd)

rendering any kind of feedback an impossibility as well. Chase Bank added to this confusion by representing no questions could be answered by branch personnel or call center employees.

133.    Chase Bank's combined representations may have been honestly believed at the time. But if they were, Chase Bank had no reasonable grounds for believing them to be true considering they did not even half-attempt to meet what they represented they would do.

134.    Legendary, and by extension the Class, reasonably relied on Chase Bank's representations by waiting for emails that never came. As a result, Legendary, and by virtue the Class, was harmed based on the delay created by Chase Bank's negligent misrepresentations.

## SIXTH CAUSE OF ACTION
## (DECLARATORY RELIEF – CHASE DEFENDANTS ONLY)

135.    Legendary hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein for its first cause of action.

136.    There is now an actual controversy between the Chase Defendants and the Class concerning the language provided within Exhibit 4.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

137.    In short, was it proper of Chase Bank – in light of the circumstances behind the passing of the CARES Act, the limitations imposed by lenders while implementing the PPP (excluding outside applicants, for example), and the economic uncertainty crippling the entire nation – to condition a small business's query and/or application under the PPP upon a release and waiver of liability hastily tucked in to their online portal?

138.    Legendary, for itself and for the Class, and pursuant to 28 U.S.C. § 2201, requests a declaration such a release and waiver is void as against public policy, fails for lack of legitimate consideration, and further constitutes bad faith and oppressive conduct by Chase Bank.

### SEVENTH CAUSE OF ACTION
### (INJUNCTIVE RELIEF – ALL DEFENDANTS)

139.    Legendary hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein for its first cause of action.

140.    Under 15 U.S.C. § 26, injunctive relief is proper in order to prevent threatened loss or damage as a result of the Defendants violation of the antitrust laws.

141.    On behalf of the Class, Legendary seeks a preliminary and permanent injunction prohibiting any future violations of the antitrust

(¶ 140 cont'd)

laws. Specifically, the named Defendants should be enjoined from accepting applications under the PPP from their existing customers only (a requirement not in the CARES Act or SBA's Interim Final Rule), and Chase Bank should be particularly enjoined from preferring certain business clients over others outside of the requirements of the PPP and the Treasury Guidelines.

142.    Because any injunctive relief will merely open the Class, and public at large, to more options for purpose of applying for loans under the PPP, Legendary would request the bond requirement of 15 U.S.C. § 26 be waived or otherwise set at a nominal amount. There can be no reasonable ground that any injunction granted by the Court may result in harm to any of the defendants as it would merely enforce the spirit and purpose of the CARES Act and avail more small businesses to that spirit and purpose.

///

# **PRAYER FOR RELIEF | JURY TRIAL DEMAND**

WHEREFORE, PLAINTIFF, ON BEHALF ITSELF AND FOR THE CLASS, PRAYS OF THIS COURT TO DO THE FOLLOWING:

1. Certify this action as a class action, pursuant to the Federal Rules of Civil Procedure, Rule 23, designating the named Plaintiff as the Class Representative, and counsel for the named Plaintiff as Class Counsel;

2. Preliminarily and permanently enjoin the named Defendants from engaging in conduct contrary to the antitrust laws of the United States;

3. Declare the rights of the named Plaintiff and Class in general with respect to Exhibit 4 herein;

4. Declare the acts of the Defendants to be illegal within the mean of 15 U.S.C. §§ 1, 15;

5. Award damages – compensatory, exemplary, and statutory – to the named Plaintiff and the Class in an amount to be determined at trial;

6. Award pre-judgment and post-judgment interest at the rate provided by law;

7. Award costs of suit, including attorney fees as required by law; and

8. For such other and further relief as the Court may deem just and proper.

[signature overleaf]

Dated: 20 April 2020          Respectfully submitted by,

/s/ Adam D. Dolce

_____

**Adam D. Dolce, Esq.**
414 Yale Avenue, Suite B
Claremont CA 91711
Telephone: 909-542-9030
FAX: 909-992-3554
Email(s): adam@dolcelegal.com;
thenonprofitlawfirm@gmail.com;

Attorney for the Plaintiff and Proposed
Class

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to the Federal Rules of Civil Procedure, Rule 38, together with Local Rule 38-1, Plaintiff hereby demands trial by jury of all claims so triable.

Dated: 20 April 2020           Respectfully submitted by,

/s/ Adam D. Dolce

_____

**Adam D. Dolce, Esq.**
414 Yale Avenue, Suite B
Claremont CA 91711
Telephone: 909-542-9030
FAX: 909-992-3554
Email(s): adam@dolcelegal.com;
thenonprofitlawfirm@gmail.com;

Attorney for the Plaintiff and Proposed Class

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

We want you to be prepared

<u>View Online</u> | <u>Email Security Information</u>

**CHASE ○ for BUSINESS**

**To apply for a Paycheck Protection Program loan, you must have an active Chase Business Online profile.** If you don't, click <u>here</u> to set up or update your online credentials.

**You can only apply for this online. It's not available by phone or in the branch.**

Dear Business Client,

You may be eligible for a Paycheck Protection Program loan under the new federal legislation designed to provide small businesses quick access to capital for payroll and other overhead costs.

Here's what you need to know about the program, which was created as part of the Coronavirus Aid, Relief and Economic Security (CARES) Act. This is based on the latest information from Chase and the Small Business Administration (SBA). Other eligibility requirements may apply.

- The Payment Protection Plan loan will be generally available to companies with 500 employees or less, individuals who operate under a sole proprietorship as well as 501 (c)(3) nonprofit organizations, 501 (c)(19) veterans organizations, and some Tribal business concerns.

- It expands eligibility under the SBA 7a program to help businesses cover costs related to payroll (including healthcare related costs), rent, mortgage interest, interest on existing debt and utility payments.

- You can apply for this only online. It's not available by phone or in the branch.

- You must have a Chase business checking account as of February 15, 2020.

- You must confirm that your business needs financial relief because it was impacted by Coronavirus events.

- It will require no collateral or personal guarantees.

- Generally the loan amount will be based on 2.5 times your average monthly payroll costs.

- You may be eligible to have all or a portion of the loan principal forgiven based on SBA rules.

- You won't have to make payments on the loan for at least six months.

- The interest rate will be no more than 4% and likely no longer than 10 years. The terms may change during the application process.

We expect the SBA to provide additional details soon, and we'll update our Chase for Business COVID-19 Program page with the latest information.

## How to prepare

We encourage you to be prepared so that you have what you need when we open our website for applications. Have the following information:

- The date you started your business

- Detailed information in order to calculate the average monthly payroll costs for your employees for the past 12 months, as outlined by the SBA

- Your annual revenue

- Your business mailing address

## How to earn loan forgiveness

You may be eligible to have all or a portion the loan principal forgiven if you use the funds for certain qualifying costs incurred and payments made for payroll, mortgage interest, rent and utilities during the first eight weeks following the date the loan is made. You will have to provide documentation.

**In general, we are experiencing extremely high call volumes.** So, we urge you to sign in to Chase Business Online or the Chase Mobile® app for your ongoing account management.

During this difficult period, we are working hard to serve you and thank you for your trust.

Sincerely,

*Jen Roberts*

CEO, Chase Business Banking

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

You may have to wait a long time if you call

View Online | Email Security Information

**CHASE ✦ for BUSINESS**

# Learn more about the SBA's Paycheck Protection Program

- Our webinar is on Thursday, April 2 @ 4PM Eastern Time

- Register here

# Save time, go online

With extremely high call volumes and staffing challenges, **customers have to wait a long time.** So we urge you to use the Chase Mobile® app or Chase Business Online for all your ongoing account management.

Here are top tasks our customers are handling on the Chase Mobile® app or Chase Business Online without waiting on the phone:

- **Find the latest information on Paycheck Protection Program loans**

- **Check on your recent transactions or balances.**

- **Send or request a payment.**

- **Deposit checks.**

  Take a picture with your mobile app or scan with your QuickDeposit$^{SM}$ scanner, if you have one. We recently raised the limits for many customers; you can see yours on the QuickDeposit check-entry page in the Chase Mobile app.

- **Lock/unlock a credit card.**

- **Request a replacement debit card.**

     You'll still have to call to activate any new business cards.

- **See how things work.** How—to videos walk you through the details.

**Check our recovery page for the latest information about servicing your account.**

 Thank you for being a Chase customer.

 Sincerely,

*Jen Roberts*

CEO, Chase Business Banking

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

46
EXHIBIT 3
**TO CLASS ACTION COMPLAINT**

We will let you know as soon as you can apply.

View Online | Email Security Information

**CHASE** *for* BUSINESS

Dear Business Client,

Chase wants to help you get the Small Business Administration (SBA) Paycheck Protection Program emergency funds you may need to continue paying your employees and supporting your business.

Financial institutions like ours are still awaiting guidance from the SBA and the U.S. Treasury. As a result, Chase will most likely not be able to start accepting applications on Friday, April 3rd, as we had hoped.

***Make no mistake*** – we will help you, our customer, with getting access to these emergency funds. And we will make it as easy as possible for you to get these funds quickly. We hope to have the guidance we need from the government soon so that we can begin assisting you.

## Here's how to find out when the program is available:

We will announce when we can start accepting applications in several ways:

1. We will send an email to all customers for whom we have an email.

2. We will tweet at @ChaseforBusiness and @Chase.

3. We will update our website chase.com/cares in real time.

Please do NOT go to a branch for this, as they will not be able to assist you. All applications must be made online through this digital form.

## Be ready

We encourage you to be prepared so that you have what you need when we open our website for applications. Have the following information:

- A Chase Business Online user ID and password – you'll need this to apply. If you don't have an active profile, click here to set up or update your online credentials.

- The date you started your business

- Detailed information to calculate the average monthly payroll costs.

- Your annual revenue

- Your business mailing address

Please know that Chase is doing everything we can to help you apply for this program. We will keep you updated on chase.com/cares.

Sincerely,

*Jennifer Roberts*

CEO, Chase Business Banking

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Paycheck Protection Program

Chase is committed to helping small businesses navigate the new Small Business Administration (SBA) Paycheck Protection Program. The program provides small businesses with funds to pay up to 8 weeks of payroll costs, including benefits. Funds can also be used to pay interest on certain qualifying mortgages, rent, and costs for utilities, as more fully explained in SBA materials.

This program is provided through Chase as well as other financial institutions, but it is an SBA program and, accordingly, the requirements and availability of loans under the program are primarily driven by the SBA. Funds are limited.

Please complete the form below for a Chase Representative to contact you about the application process[1].

**Business Ownership\***

Choose ▾

**Business Name\***

**First Name\***     **Last Name\***

**Tax ID Number\***

**Email Address\***

**Phone Number\***

123-456-7890

GET STARTED

[1] Any loan made under the U.S. Small Business Administration's ("SBA") Paycheck Protection Program must be submitted to and approved by the SBA. There is limited funding available and so all applications submitted will not be approved and funded by the SBA. Chase anticipates high volume and there may be processing delays and system failures along with other issues that interfere with Chase taking your application or submission of any application to SBA. Chase does not represent or guarantee that it will take your application or submit any applications taken before SBA funding is no longer available or at all. By using Chase to seek a Paycheck Protection Program loan, you agree that Chase is not responsible or liable to you (i) if your application is not taken by Chase or any application is not submitted to the SBA until after SBA stops approving applications, for any reason or (ii) if your inquiry or any application is not processed. You also forever release and waive any claims against Chase concerning failure to obtain a loan. This release and waiver applies to but is not limited to any claims concerning Chase's (i) pace, manner or systems for processing or prioritizing your inquiry or any resulting applications, or (ii) representations by Chase regarding the application process, the Paycheck Protection Program, or availability of funding.

Follow us:

This site is intended for media use only.

"Chase," "JPMorgan," "JPMorgan Chase," the JPMorgan Chase logo and the Octagon Symbol are trademarks of JPMorgan Chase & Co.

Privacy    Security    Terms of Use    Accessibility    Help for Homeowners    Site map    AdChoices    Member FDIC        Equal Housing Lender

© 2020 JPMorgan Chase & Co.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Thank you!

We received your request and a Chase Representative will be in contact with you. Please do not visit a branch or contact us.

Under our current process, we are unable to accept any application from you until we contact you, and you have all the necessary documents ready to submit. You may want to consider the following steps in preparation to help expedite the process

1. Calculate your average monthly payroll to determine your loan amount. You may visit the SBA website for instructions.

2. Confirm your Chase Business online profile is up to date.

3. There is an SBA form that Chase representatives will ask you for when they call. You can find the form here. You may want to complete it beforehand to expedite the process. Please don't send it to Chase in advance.

4. Please have the following information available for all owners and controllers of your business: name, address, date of birth, title, % ownership for each beneficial owner, and social security number

5. Be prepared for signing and initialing documents by having access to a printer and/or scanner

We are anticipating high call volumes, which may impact the time of when a representative will be in touch with you.

Please visit chase.com/cares for the latest updates on this program

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

We'll email or call you with next steps

View Online | Email Security Information

**CHASE** for BUSINESS®

Dear Business Client,

We received your SBA Paycheck Protection Program inquiry, and know that you may need this funding urgently. We appreciate your patience as our technology teams and our bankers work to help you access the funding as quickly as possible.

You will receive either:

•   An email asking you to go online to complete your application or

•   A call to complete your application over the phone

Our branch and call center teams can't answer any questions about the program or the status of your loan.

Again, we know how important this funding may be to you and to your business.

Thank you for being a Chase customer.

1

**IMPORTANT INFORMATION**

All loans are subject to other requirements and availability of funds under the SBA program. Funds are limited.

**ABOUT THIS MESSAGE**

This service email gives you updates and information about your Chase relationship. This email was sent from an unmonitored mailbox. Go to chase.com/CustomerService for options on how to contact us.

Your privacy is important to us. See our online Security Center to learn how to protect your information.

Chase Privacy Operations, P.O. Box 659752, San Antonio, TX 78265-9752

JPMorgan Chase Bank, N.A. Member FDIC. Equal Opportunity Lender
©2020 JPMorgan Chase & Co.

EGCVSBALQ040420

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

We need more information from you

View Online | Email Security Information

**CHASE 🔘 for BUSINESS®**

**We encourage you to take action quickly so you don't miss this opportunity. The SBA has set a funding cap on its Paycheck Protection Program.**

Dear Business Client,

We urge you to go online now to complete the next steps for your Paycheck Protection Program loan.

**Step 1:** Make sure you have an active Chase Business Online profile. If you don't, click here to set up or update your online credentials. You can only apply online.

**Step 2:** Please click *Continue* below (or paste this URL into your browser www.chase.com/cares) to sign in to Chase and submit your application. The digital application may require you to enter information similar to what you've already submitted.

***Please make sure you have only one Chase.com browser window session open, or you may lose all of your work and have to restart your application.***

**Continue**

Our branch and call center teams can't answer any questions about the program or the status of your loan. If your Paycheck Protection Program loan is approved, Chase will deposit your funds into your oldest Chase Business Banking checking account.

Thank you for being a Chase customer.

---

**IMPORTANT INFORMATION**

All loans are subject to other requirements and availability of funds under the SBA program. Funds are limited.

**ABOUT THIS MESSAGE**

This service email gives you updates and information about your Chase relationship. This email was sent from an unmonitored mailbox. Go to chase.com/CustomerService for options on how to contact us.

Your privacy is important to us. See our online Security Center to learn how to protect your information.

Chase Privacy Operations, P.O. Box 659752, San Antonio, TX 78265-9752

JPMorgan Chase Bank, N.A. Member FDIC. Equal Opportunity Lender
©2020 JPMorgan Chase & Co.

EGCVSBAASP040320

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 8

**TO CLASS ACTION COMPLAINT**

**LAW OFFICE OF
ADAM DOLCE**
ATTORNEY AT LAW

We continue to process applications to be ready if more money becomes available

View Online | Email Security Information

**CHASE** *for* BUSINESS®

Dear Business Client,

As predicted, the SBA's Paycheck Protection Program was hugely popular. In fact, we have learned the SBA has approved loans that will exhaust all the funding available for the initial round.

We have notified all of our customers who received funding in the first round. We understand that many of you are disappointed, and are frustrated because we haven't updated you on the status of your application. We will do better, starting in the next few days.

Congress is currently considering another round of funding. In the interim, we're committed to:

- Continuing to work our existing queue of applications so we can be ready,

- Contacting you with any questions,

- Emailing you on the status of your application and

- Letting you know if and when additional SBA funding is available

We realize how important these SBA funds are to your business. We're doing all we can to have your application ready.

Thank you for being a Chase customer. We will keep updating chase.com/cares with the latest information.

Sincerely,

Jennifer Roberts

CEO, Chase Business Banking

**IMPORTANT INFORMATION**

All loans are subject to other requirements and availability of funds under the SBA program. Funds are limited.

**ABOUT THIS MESSAGE**

This service email gives you updates and information about your Chase relationship. This email was sent from an unmonitored mailbox. Go to chase.com/CustomerService for options on how to contact us.

Your privacy is important to us. See our online Security Center to learn how to protect your information.

Chase Privacy Operations, P.O. Box 659752, San Antonio, TX 78265-9752

JPMorgan Chase Bank, N.A. Member FDIC. Equal Opportunity Lender
©2020 JPMorgan Chase & Co.

EGCVSBAOF041520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

52
EXHIBIT 9
**TO CLASS ACTION COMPLAINT**

We are accepting online applications

<u>View Online</u> | <u>Email Security Information</u>

**CHASE** *for* BUSINESS®

**Make sure you have an active Chase Business Online profile. If you don't, click here to set up or update your online credentials. You can only apply online.**

Dear Business Client,

You may be eligible and can now begin applying online for a loan under the Small Business Administration's (SBA) new Paycheck Protection Program. The program is designed to provide small businesses access to capital for payroll costs and other expenses. The CARES Act has set a funding limit.

**Get Started**

We are receiving many applications, so you should prepare the following to help expedite the process:

- Confirm you can sign in to Chase Business Online and verify that you had a Chase Business checking account since February 15, 2020.

- Calculate your average monthly payroll costs to determine your loan amount. For instructions, visit the SBA website.

- Know the date you started your business, your annual revenue and your business mailing address.

We encourage you to take action quickly to start the process to help you get the emergency funds you may need.

**Please make sure you have only one Chase.com browser window session open, or you may lose all of your work and have to restart your application.**

**Apply Now**

(you can also paste this URL into your browser www.chase.com/cares)

**If you have already applied online, please disregard this email.**

Our branch and call center teams can't answer any questions about the program or the status of your loan. If your Paycheck Protection Program loan is approved, Chase will deposit your funds into your oldest Chase Business Banking checking account.

Thank you for being a Chase customer.

Sincerely,

*Jennifer Roberts*

CEO, Chase Business Banking

**IMPORTANT INFORMATION**

All loans are subject to other requirements and availability of funds under the SBA program. Funds are limited.

**ABOUT THIS MESSAGE**

This service email gives you updates and information about your Chase relationship. This email was sent from an unmonitored mailbox. Go to chase.com/CustomerService for options on how to contact us.

Your privacy is important to us. See our online Security Center to learn how to protect your information.

Chase Privacy Operations, P.O. Box 659752, San Antonio, TX 78265-9752

JPMorgan Chase Bank, N.A. Member FDIC. Equal Opportunity Lender
©2020 JPMorgan Chase & Co.

EGCVSBA2V040320